81,202-03

CAUSE NO. CR 20713

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

JOEL RAMIREZ
TDCJ ID #1699615
   RELATOR

V.

CHERYL JONES COUNTY DISTRICT CLERK:
IN HER OFFICIAL CAPACITY,
   RESPONDENT

IN THE 35TH JUDICIAL

DISTRICT COURT OF

BROWN COUNTY TEXAS

A.   **PLAINTIFF'S ORIGINAL APPLICATION FOR WRIT OF MANDAMUS**

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW, JOEL RAMIREZ, Relator, pro se in the above-styled and numbered cause of action and files this Original Applicaiton For Writ of Mandamus, prusuant to Article 11.07 Section 3(c) of the Texas Code of Criminal Procedure, and would show the Court the following:

B.   **RELATOR**

1.01 JOEL RAMIREZ, TDCJ #1699615 is a offender incarated in the Texas Departmnet of Criminal Justice and is appearing pro se, who can be located at Eastham Unit, 2665 Prison Rd. #1, Lovelady, Texas 75851.

1.02 Relator has exhausted his remedies and has no other adequate remedy at law.

1.03 The act sought to be compelled is ministerial, not discretionary in nature. Rules of Appellate Procedure Rule 66.1 With or Without Petition: the Court of Criminal Appeals may review a court of appeals' decision in a criminal case on its own initiative under Rule 67 for Discretionary Review Without Petition or on the Rule -1 petition of a party under Rule 68 - 2. Under Rule 66.2 Not a Matter of Right Discretionary review by the Court of Criminal Appeal is not a matter of right, but of the Court's discretion.

1.04 RELATOR would show that if this Honorable Court of Criminal Appeals Grants RELATOR'S 11.07 Writ for an out of time PDR it would still have an injustice affict in the problem of missing Vol. 1 and 2 of the Reporter's Records that

was left out of the Direct Appeal on Ground number Five. If RELATOR was given an oppertunity to file a PDR the number Fifth Ground would still be left out for lack of Vol. One and Two of the Reporter's Records.

If Granted Rule 67 the Direct Appeal would still not be in comfority with the Constitutional Right to Profect an Appeal without all the Reporter's Record in which RELATOR Vol. three - ?

In Vol. Three; Page 7; Line 18 - 25Ms. Hennington: Your Honor, we would like to, with the Court's premission, to proceed with our motion to withdraw first. THE COURT: All right. And that's in each case, right? MS. HENNINGTON: Yes, sir, Your Honor. Your Honor, based on the request of our client, Mr. Reamirez, we have filed a motion to withdraw (Page 8, Lines 1 - 25) in each of the cases that we have been appointed to; represent him on.

He has accused us of not investigating, not researching the law. He has accused us of -- of going -- doing things without his premission.

And we believe that those allegations have put us in an untenable position that we can't represent him. We spoke with him today to make sure there is nno chance to repair that relationship, and he has informed us that he does not want us to be his lawyers, that he believes we have done thing that violate our code of ethics. and we are requesting to be allowed to withdraw from representing him.

THE COURT: All right. Mr. Ramirez, what is ti you're complaining of? I've not read the letters that you've sent because they have been sealed. I thinnk you've gotten a response back from my court (Page 9; Lines 1 - 7) administrator about that. Whatever the letters are, when you -- you can't communicate directly with me when you have a lawyer. So, they've been sealed. They are in the Court's file, whatever they are, but they are sealed. If you need me to open them in the presence of everybody, I can do that, but right now, I want you to tell me what is you concern, what do you want done, and

Page Two

why.

THE DEFENDAT: I wanted to take the stand,, THE COURT: Go ahead. but they wouldn't subpoena my witnesses. Tey say my witnesses don't matter, that it was irrelevant. All they wated to subpoena is character witnesses after I lose. they told me I was going to lose anyway. At that time I was here, sir. I came ready to go to jury, they said, Your're going to get life.. I assumed I was going to -- (Inaudible). something wrong here (Page 10, Lines 1 - 10) I took too much medication. It's my medication. If I wouldn't have been so medicated, I would have never signed that -- whatever I signed, you know.

I mean why wouldn't they subpoena my witnesses? All they wanted to subpoena was character witness for after I lose. They never talk about I might win. They are mad at me becuase I wouldn't plea bargain or plead. It's just...

........... THE COURT: what else? Tell me everything you're concerned about. THE DEFENDANT: She said something about -- THE COURT: She said what? I didn't understand you. THE DEFENDANT: She said something that wasn't right.

(Page 11; Line 13 -25) The COURT: Now, what is your response to what he says, his complants? give me your response. MS. HENNNINGTON: Judge, we know that he has had medicaition, but he is telling us things that -- or saying -- what he is saying is he was on some medication and we forced him to sign it because he never would have signed it if he would have been not under the influence. He has accused us of lying to him. I mean, and it 's in his letter. He has told us that. He's told it to our face. He said it in the letter. I understand he's nervous now, so I'm not sure what I didn't say correct earlier, but he has done all of those things. As far as what we've done, we have (Page 12; Line 1) researched.

(Page 12; Line 17 - 25) THE COURT" The I'll open the letter and read it at this time. There is a letter in the Court's file. It's file-marked January 5th or 2011, where it was written in -- a letter was written to Mr.

Ramirez by Ms. Aaron who is my court coordinator, who is present in the courtroom, with copies to Ms. Hennington, to the D.A.'s office, and the clerk. That is, copies of the letter that she wrote. The document that was watten by the (Page 131 Line 1) Defendant has been under seal since it was received.

(Page 15; Line 11 - 14) And Mr. Ramirez was involved all along the way, when in jail, when not in jail, in these preparation attempts, in the work that we have been doing.

(Page 16; Line 6 - 21) I believe that he believes in his heart that Ms. Hennington and I are no doing a good job for him, will not to a good job for him, and do not have his best interests at heart. I believe he is sincere when he tells the Court that he believes all we want him to do is to plead guilty. I believe while it is not so that we've promised him he would get life if he was convicted, I believe he hears that and he's inmovable in his belief that that is what we're advising him.

THE COURT: You''re telling me you did not tell him that. Mr. JONES: I did not. I would never -- THE COURT: And Ms. Hennington never said that?

THE DEFENDANT: She did.

(Page 181 Line 5 - 14) Mr. Ramirez, you've heard what they've had to say. We will talk about the jury waiver business later, if we need to, but right now, just the only issue is whether they should be allowed to withdraw as your lawyers today. And now, this is set for trial taday and ready to go. Anything else you want to tell me that you believe has a bearing on that?

THE DEFENDANT: They said they didn't tell me that I was going to get life?

THE DEFENDANT: Why do they say my witnesses don't matter? THE COURT: Let me ask her. did you tell him that his witnesses didn't matter?

MS. HENNINGTON: Your Honor, without going into details of the --

Page Four

(Page 19; Line 20 - 25) THE COURT: You concur with that, Mr. Jones? Mr. JONES: Your Honro, I apoligize. Mr. Adams was making a remark to me, sidebar.

THE COURT: Did you not hear what she said? MR. JONES: I did not.

(Page 20; Line 20 - 25) THE COURT: Back to you. Anything else, Mr. Ramirez, you would like to say on this issue of the attorneys representing you?

THE DEFENDANT: They both told me I'm going to lose and they don't want to subpoena my witnesses. All they want to subpoena is character witnesses for (Page 211 Line 1 - 25) after I lose. I've seen them three times. Both times, she tried to get me to plead, he tried to get me to plead, and we worked on my case one time, three hours. He took pictures for three house. Do you think we're ready for jury trial, three house on my case?

THE Court: Today is a nonjury proceeding. There has earlier been a jury waiver. So, we will talk about that in a minute, but --

MR. JONES: May I address that last comment? THE COURT: You may.

MR. JONES: Your Honor, it's my understanding -- and Ms. Henington might be able to shed light on this as well -- that knowing that we had today's setting, in December Mr. Ramirez was contacted and required to get with us to do trial preperation. If I understand the chain of events in the office, what happeneed was we received work that instead he had written a letter to you, telling the Court, as your've now see, that we were essentially incompetent boobs who were twisting his arm, and he did not make himself available for trial preparation for today's setting. I would just like to add before the Court rules that I truly believe there is an irreparable (Page 22; Line 1 - 4) attorney-client relationship. And, in fact, Mr. Ramirez has evenn spoken to us earlier this morning and directly to me looking at me regarding representing himself if the Court does not permit us to withdraw.

(Page 22; 5 - 25) THE COURT: All right. Mr. Ramirez, anything else you want to say on this issue of the withdrawing of the attorneys?

THE DEFENDANT: , sir. THE COURTL All right. At this juncture, vien the circumstances and the totalityof the -- what has been presented, what I think is the credible evidence before me on this issue, I do not believe that these attorneys have been derelict in their duties. I know each of these attoneys, and they try cases in this court on a regular basis. They are good advocates and they are responsible attonreys and I don't find that they have done anything that merits them being two out of the case as your lawyers. And the motions to withdraw are denied in each case. We will go to the next issue, which is this jury waiver. The jury waiver was signed in these matters --

MR. JONES: Respectfully, Your Honor, may I interrupt for one moment?

THE COURT: You may.

(Page 23; Line 1 - 25) MR. JONESL Your Honor, based on my discussions in Ms. Hennington's presence with Mr. Ramirez this morning, I would ask the Corut to inquire of Mr. Ramirez whether he wishes to proceed pro se.

THE COURT: MR. Ramirez, right now, they are still your lawyers. And are you telling me that you want to be your own lawyer and go to trial without any lawyers or not? I mena, right not, I'm expecting them to do their job for you. You're not going to have hybrid representation. You're not going to be doing your thing and them doing their thing at the same time.

In other words you've said you were indigent, I appointed lawyers, rotating syste, thre next one up, qualified attorneys licensed to practive in this state. And in most cases, you only have one lawyer. You have two. I'm not paying for two. They are doing it because of their circumstances. So, you're really getting two lawyers for the price of one lawyer in this matter. This is not a capital murder case. You know, that's when we have two lawyers.

Page Six

(Psge 23; Line 23 - 25) I'm not going to pay for two lawyers for you, but you're got them here because of their willingness to do this and split their together, but if you don't (Page 24; Line 1 - 25) want them here, then there is going to be some serious situations.

but just know this, if we go forward with it, this case -- you know, if you were going to represent yourself, you're not going to have the benefit of these lawyers questioning witnesses. You're gong to be representing yourself and you'll have to do it all. And I'll to go forward with you and admonish you about that and be sure that I'm satisfied that you are able to represent yourself, but it's a situation that I'm asking you, because your lawyer has asked me that. Otherwise, I am expecting them to do their job for yo. What is you desire? THE DEFENDANT: I was talking to my wife and she said to ask you if we have time to hire my own lawyer THE COURT: You've go -- your case is going today. I'm not delayig it. So, you have had if you wanted to hire a lawyer, if-- you told me earlier you couldn't afford one, but if you wanted to hire a lawyer, you could have hired a lawyer anywhere along the line. THE DEFENDNAT; She just told me. THE COURT; Well, I mean, this is the day of trial. I''m not going to delay it. If you've got a (Page 25; Line 1 - 25) lawyer that yo want to come in here and sit down her and say, okay, they are ready to go, fine. but i'm not continuing the case. so, at this point, the last question on this sisue is: Are you wanting to represent yourslef or are you ready to go on to the next matter, which is this jury waiver issue, which is going to be something that need to be dealt with. THE DEFENDANT: I can't represent myself. THE COURT: All right. I think that's a wise decision on your part. But at this juncture, let me go to you now. Back to you. What is your position on this jury waiver that was filed and accepted by the Court back to October 25th,

Page Seven

2010, wen it was set for jury trial? MR. JONES: May I address this, your Honor? THE COURYT: Yes, You may. MR. JONES: Your Honor, we received the correspondence -- a copy of the correspondennce the Court has, that you have reviewed this morning. And we would ask the court to take note of that in relation ot this motion. THE COURT: I will do so. MR. JONES: Mr. Ramirez that letter, asserts that he was udner the influence of (Page 26; Line 1 -4) a presecription Controlled, Substance, properly presecribed, when he signed the waiver of jury trial in the case that the state has elected to go forward in today.....

II.

C. RESPONDNET

2.01 Respondent, Cheryl Jones, in her Official Capacity as District clerk of Brown County, Texas has a ministerial duty to receive and file all papers in a criminal proceeding, and preform all other duties imposed on the clerk by law prusuant to TCCP Art. 2.21, and is responsible under TCCP 11.07 Sec. 3(c) transmit to the Court of Criminal Appeals a copy of the Application for writ of habeas corpus, any answers filed, and a certificatte recting the date upon which the finding was made if the convicting court decides that there are no issues to be resolved.

2.02 That in conformity with Rule 34 of Appellate RecordsRule 34.1 Contents. The Appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record. Even if more than one notice of appeal is filed, there should be only one appellate record in a case.

Volume One and Two will verify Ground Five of the Direct Appeal in support of of the RR alleged herein. The Direct Appeal was not competed by Rudy Taylor for want of what ever reason He had failed to complete Ground Five in the Direct Appeal.

2.03 In Relator's Brief on page v.(Issues Presented) Issue Number Five was alleged but was not argued as it whould have been. In State's Brief on page 5 of (Issues Presented State alleges (Nothing is preserved for review because appellant did not argue his Fifth point of error).. Therefore nothing in Eleventh District Court of Appeals had been and was forefitted for lack of Reporter's Records or any number of reasons. This Honorable Court should take that Relator should be given another chance to a Direct Appeal to argue Ground Five to the Fullest. A PDR if granted would lack ground Five and Relator would lose the benifit of this ground.

D.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Relator, Joel Ramirez , pro se, respectfully requests This Honorable Court of Criminal Appeals to grant an Out of Time Direct Appeal to relitigate in good faith and to substantially prevail in this matter. It would not burden this Honorable Court of Criminal Appeals to direct the District Court to let Relator begin over on the Direct Appeal or burden the District Court of the same.

Submitted on this the 11th day of April, 2015.

Respectfully submitted,

RELATOR   *Joel Ramirez*